So Ordered.

Signed this 12 day of February, 2025.



_____
Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

Timothy A Joanette and Tina Ann Joanette,        Ch. 7
                                                 Case No. 22-60754-6-pgr
                            Debtors.
_____

Bourdeau Brothers, Inc.                          Adv. Pro. No. 24-80002-6-pgr

                            Plaintiff,
v.

U.S. Department of Agriculture,
Farm Service Agency, et al.

                            Defendants,
_____

APPEARANCES:

Ryan Smith & Carbine, Ltd.                       Antonin Robbason, Esq.
*Counsel for Plaintiff*
*Bourdeau Brothers, Inc.*
98 Merchants Row
Rutland, VT 05701

Law Office of Maxsen D. Champion                 Maxsen D. Champion, Esq.
*Counsel for Debtors and Defendants*
*Timothy A Joanette and Tina Ann Joanette*

1

8578 East Genesee Street
Fayetteville, NY 13066

Carla B. Freedman, United States Attorney, NDNY     Forrest T. Young, Esq.
*Counsel for Defendant USDA Farm Service Agency*
100 South Clinton Street
Syracuse, NY 13261

Randy J. Schaal, Attorney At Law     Randy J. Schaal, Esq.
*Counsel for Defendants*
*Alcide Joanette and Dana Joanette*
312 Broad Street
Oneida, NY 13421

Bhatt Law Firm     Neil Tarak Bhatt, Esq.
*Defendant and Chapter 7 Trustee*
536 State Street
Ogdensburg, NY 13669

# MEMORANDUM-DECISION AND ORDER DENYING BOURDEAU BROTHERS' MOTION FOR SUMMARY JUDGMENT AND GRANTING FSA's CROSS MOTION FOR SUMMARY JUDGMENT

Presently pending are a summary judgment motion filed by Plaintiff Bourdeau Brothers, Inc. ("Bourdeau") (AP Docket No. 49) and a cross motion for summary judgment filed by the United States Department of Agriculture, Farm Service Agency ("FSA") (AP Docket No. 54).

Bourdeau opposes FSA's cross motion (AP Docket No. 60), and FSA opposes Bourdeau's motion (AP Docket No. 66). Defendants Alcide and Dana Joanette (the "Senior Joanettes") filed objections to Bourdeau's motion. (AP Docket Nos. 52, 58). In turn, Bourdeau filed a reply (AP Docket No. 59), and the Senior Joanettes interposed a sur-reply (AP Docket No. 64). The Chapter 7 Trustee filed an objection to Bourdeau's motion (AP Docket No. 55) and Bourdeau filed a reply (AP Docket No. 63).

2

This Court heard oral argument on January 21, 2025, in Utica, New York; counsel for Bourdeau, FSA, the Senior Joanettes, and the Trustee appeared and were heard. Decision was reserved.

For the following reasons, this Court denies Bourdeau's motion and grants FSA's cross motion.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a), 1334(b), 157(a), and 157(b)(2)(A), (I), and (O). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

Timothy A. Joanette and Tina Ann Joanette (the "Debtors") operated a dairy farm in St. Lawrence County, New York. (Case No. 22-60754, Docket No. 9).

On September 29, 2003, the Debtors signed a land sale contract (the "Land Contract") to purchase certain real property (the "Real Property") from Timothy's parents, the Senior Joanettes. (AP Docket No. 54, Ex. 6). Debtors agreed to pay $650,000 over thirty-five (35) years at a variable interest rate. *Id*. According to the Land Contract, the Senior Joanettes would "furnish a warranty deed and abstract upon full payment of the selling price." *Id*. Along with the land and buildings, the Debtors purchased certain farm equipment, listed on schedule D of the Land Contract. *Id*. When the Land Contract was signed, the Real Property was encumbered by a mortgage held by First Pioneer Farm Credit, ACA. (AP Docket No. 64, at ¶ 7). The purchase price included the balance due under the mortgage, which Debtors agreed to pay as part of the Land Contract. *Id*.

3

There was a fire on the farm in 2006, which resulted in an insurance payment of $277,983.75. (AP Docket No. 64, at ¶ 7, Bankruptcy Case No. 22-60754, Docket No. 9). The insurance funds were used to satisfy First Pioneer's mortgage. *Id.*

In May of 2010, FSA made three loans to the Debtors in the amounts of $300,000, $275,000, and $15,000. (AP Docket No. 54-3, U.S. Stmt. of Facts, at ¶ 3). The loans were secured by blanket liens on Debtors' crops, farm equipment, and livestock. *Id.* at ¶ 5. FSA filed UCC-1 financing statements with New York State. *Id.* at ¶ 6.

As additional security, the Debtors and Senior Joanettes executed and delivered three mortgages on the Real Property to FSA. *Id.* at ¶ 7.

FSA asserts a secured claim with a balance of $518,496.70 as of December 1, 2022. (Proof of Claim 2). The Debtors are current with respect to their repayment obligations under the FSA loans. (AP Docket No. 54-3, U.S. Stmt. of Facts, at ¶10).

In May of 2020, Bourdeau sold farming products, including feed and fertilizer, to the Debtors. (AP Docket No. 61, Pl.'s Resp. to U.S. Stmt. of Facts, at ¶ 9). In exchange, the Debtors signed a promissory note and security agreement. *Id*. The security agreement granted Bourdeau a lien on the Debtors' personal property, including all cattle and machinery. *Id*. Bourdeau filed a secured claim with a balance of $152,571.05 as of December 1, 2022. (Amended Proof of Claim 6-2). Bourdeau filed a UCC-1 financing statement with New York State. *Id.*

On December 1, 2022, the Debtors filed a petition for relief under Chapter 12 of the Bankruptcy Code. (Case No. 22-60754, Docket No. 1, Pet.). After the Court denied confirmation of their first proposed Chapter 12 plan (Case No. 22-60754, Docket No. 43), the Debtors filed an amended plan, which contemplated cessation of farming operations and liquidation of the livestock and farm equipment. (Case No. 22-60754, Docket No. 45).

On January 30, 2024, this Court authorized the sale of the Debtors' livestock for a total of $384,000. (Case No. 22-60754, Docket No. 75). After Chapter 12 Trustee fees and commissions were deducted, there was a remaining balance of $345,600. (Case No. 22-60754, Docket No. 82, at ¶ 10).

On February 9, 2024, the Debtors sold their farm equipment for a total of $260,430.18. (Case No. 22-60754, Docket Nos. 76, 82 at ¶ 11). After Chapter 12 Trustee fees and commissions from that transaction were deducted, there was a remaining balance of $247,997.27. *Id*.

On April 10, 2024, this Court authorized the Chapter 12 Trustee to distribute $54,457.73 to administrative claim holders. (Case No. 22-60754, Docket No. 117).

The remaining proceeds total $539,139.54 (the "personal property proceeds"). (AP Docket No. 61, Pl.'s Resp. to U.S. Stmt. of Facts, at ¶ 26). FSA holds a first priority security interest in the personal property proceeds; Bourdeau has a second priority interest. (AP Docket No. 49-2, at ¶ 3).

On April 12, 2024, the Debtors converted this case to a case under Chapter 7. (Case No. 22-60754, Docket No. 119). The parties consented to the Chapter 12 Trustee transferring the personal property proceeds to the Chapter 7 Trustee pending further order of this Court. (Case No. 22-60754, Docket No. 127).

On September 9, 2024, this Court granted the Debtors a Chapter 7 discharge. (Case No. 22-60754, Docket No. 143).

**PROCEDURAL HISTORY**

Bourdeau commenced this adversary proceeding on January 5, 2024, by filing a Complaint. (AP Docket No. 1). Bourdeau filed an Amended Complaint on August 13, 2024. (AP Docket No.

5

35). On September 9, 2024, FSA (AP Docket No. 41) and the Senior Joanettes (AP Docket No. 42) interposed Answers opposing the relief requested in the Amended Complaint.

After a series of filed pleadings, court conferences, and discovery, Bourdeau and FSA filed dueling motions for summary judgment and this Court heard oral argument, as set forth above.

## DISCUSSION

### A. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure, applicable here pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d. Cir. 2011).

The moving party must support its assertions by citing to evidence in the record, which may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). Further, an affidavit in support of summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).

"Where the moving party demonstrates 'the absence of a genuine issue of material fact,'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986), "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

When adjudicating a summary judgment motion, the court must "resolve all ambiguities . . . and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). The court must also consider the burden of proof the moving party would face at trial. *Celotex Corp.*, 477 U.S. at 322–23.

### B. Analysis

The fundamental facts are uncontested.

FSA and Bourdeau both held security interests in Debtors' livestock and equipment, with FSA's lien being senior and its loans also being secured by the Real Property. (AP Docket 54-5, U.S.'s Resp. to Pl.'s Stmt of Facts, at ¶ 1). Liquidation of the livestock and equipment did not yield proceeds sufficient to pay both FSA and Bourdeau in full.[1]

Absent judicial intervention, the personal property proceeds will be paid first to FSA, satisfying its claim, with the remaining funds reducing Bourdeau's claim, but leaving Bourdeau with an outstanding balance and without recourse because of the Debtors' bankruptcy discharge. (AP Docket 54-5, U.S.'s Resp. to Pl.'s Stmt of Facts, at ¶ 3).

Bourdeau seeks to avoid this outcome by invoking the equitable marshaling doctrine to account for FSA's ability to recover from the Real Property. Under this scenario, Bourdeau's claim would be paid first and satisfied from the personal property proceeds, with the remaining funds reducing FSA's claim, the balance of which would be paid pursuant to the terms of FSA's loan agreements with the Debtors and Senior Joanettes.

---

[1] The personal property proceeds total $539,139.54. (AP Docket No. 61, Pl.'s Resp. to U.S. Stmt. of Facts, at ¶ 26). The combined balance of FSA's claim and Bourdeau's claim, as of the date of filing, was $671,067.75 ($518,496.70 due to FSA, plus $152,571.05 to Bourdeau). (Proof of Claim No. 2 and No. 6-2). Although FSA's claim has been reduced by ongoing payments since the date of filing (AP Docket No. 54-2, at ¶4), there are still insufficient funds to satisfy both FSA and Bourdeau from the personal property proceeds.

7

The fundamental legal principles are likewise undisputed.

Generally, "the priority of liens is determined by the principle 'first in time, first in right.'" *Meyer v. United States*, 375 U.S. 233, 236, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963) (quoting *United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954)).

However, courts have recognized a limited equitable exception to this general rule. The doctrine of marshaling can be invoked to prevent a senior creditor, having two funds available to satisfy its debt, from draining an asset that is a junior creditor's only source of repayment. *Id*.

Marshaling "is founded . . . in equity, being designed to promote fair dealing and justice. Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security." *Id.* at 238.

When marshaling is applied, the senior creditor is compelled to seek recourse against "readily available collateral" in which the junior lienholder has no interest. *See In re Arlco, Inc.*, 239 B.R. 261, 274 (Bankr. S.D.N.Y. 1999).

"Federal courts of bankruptcy are courts of equity and may apply the doctrine of marshaling in proper cases." *Matter of Colonial Realty Co*., 134 B.R. 1017, 1022 (Bankr. D. Conn. 1991), *aff'd sub nom.*, *In re Colonial Realty Co*., No. CIV. 3:91-200X(JAC), 1991 WL 487192 (D. Conn. Dec. 30, 1991), *aff'd*, 980 F.2d 125 (2d Cir. 1992) (quoting *In re Jack Green's Fashions For Men–Big & Tall, Inc*., 597 F.2d 130, 133 (8th Cir.1979)).

Three elements must be established to invoke marshaling: "(1) the existence of two secured creditors with a common debtor, (2) the existence of two funds belonging to the debtor, and (3) the right of the senior secured creditor to receive payment from more than one fund while the junior secured creditor can only resort to one fund." *Arlco*, 239 B.R. at 274.

The marshaling proponent must prove all three elements by clear and convincing evidence. *Id.*; *see also In re Vermont Toy Works, Inc.*, 135 B.R. 762, 767 (D. Vt. 1991).

In addition, marshaling will not be applied if it will prejudice the senior secured creditor or other parties. *See Arlco,* 239 B.R. at 274.

The parties agree that the first element has been satisfied – FSA and Bourdeau are both secured creditors of the Debtors. They differ as to the second and third elements.

FSA contends that the second prong is unsatisfied because there are not two funds "belonging to" the Debtors. To wit, FSA argues that the Senior Joanettes, and not the Debtors, hold legal title to the Real Property and any equitable interest the Debtors have in the property is (a) of indeterminate value and (b) subject to claims by the Senior Joanettes based on Debtors' default in payment under the Land Contract.

Bourdeau responds that the Debtors are equitable owners of the Real Property under New York law and that for purposes of marshaling the difference between legal and equitable ownership is immaterial. Bourdeau points to property valuations set forth in Debtors' Schedules and FSA's Proof of Claim to establish the value of the Real Property and Debtors' interest therein.

FSA also argues that the third prong has not been met because the underlying loans are not in default and have not been accelerated and thus, per federal regulation and applicable law, it cannot foreclose on the Real Property.

Bourdeau counters that the third prong does not require the immediate ability to foreclose, but only that the senior creditor have the right to receive payment from more than one fund, which applies here because FSA can recover the balance due on its claim by continuing to receive the monthly mortgage payments it originally bargained for.

This Court need not resolve these disputes because application of marshaling would prejudice FSA and is therefore not an appropriate remedy.

"The party who seeks marshaling must demonstrate that the rights of other creditors, including the senior creditor, will not be prejudiced." *Walther v. Bank of New York*, 772 F. Supp. 754, 767 (S.D.N.Y. 1991) (citations omitted).

Marshaling "deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties." *In re Elmwood Farms, Inc.*, 30 B.R. 282, 291 (Bankr. S.D.N.Y. 1983) (citations omitted).

As such, a "claim for marshaling will generally not lie where it would 'prejudice the rights or interests of the party entitled to the double fund, [or] do injustice to the common debtor, [or] operate inequitably on the interests of other persons.'" *In re Servicom, LLC,* No. 18-31722 (AMN), 2021 WL 825155, at *10 (Bankr. D. Conn. Feb. 24, 2021) (citation omitted).

A senior secured creditor is prejudiced, and marshaling should not be applied, when the creditor "would be delayed or inconvenienced in the collection of the debt owed it." *Arlco,* 239 B.R. at 274; *see In re Prichard*, 170 B.R. 41, 45 (Bankr. N.D.N.Y. 1994); *In re Leonardo*, 11 B.R. 453, 455 (Bankr. W.D.N.Y. 1981).

The outcome urged by Bourdeau would undeniably delay FSA in the collection of its debt; as disbursement of the personal property proceeds in the ordinary priority will pay FSA's claim in full.

Bourdeau contends this delay is not prejudicial because it amounts to nothing more than what FSA originally bargained for.

This argument misses the big picture.

FSA bargained for its claims to be secured by first priority liens on real *and* personal property. Stripping FSA of its first priority in the personal property proceeds deprives it of the benefit of that bargain in favor of Bourdeau, which extended credit to Debtors secured only by a second lien on personal property. *See Leonardo*, 11 B.R. at 455 ("It would be inequitable to treat Central Trust Company, Westinghouse and Small Business Administration equally since Central Trust Company bargained for and obtained additional security which Westinghouse and Small Business Administration failed to do.").

Moreover, marshaling is equitable where the senior creditor has access to collateral that is "readily available." *Arlco*, 239 B.R. at 274; *see Vermont Toy Works*, 135 B.R. at 773.

Here, marshaling would not involve ready recourse to available collateral, but would compel a senior creditor (who would otherwise receive immediate payment in full) to wait and hope for satisfaction from a stream of payments over an extended period, with a risk of further delay, effort, and expense in event of a future default and foreclosure. *See Arclo,* 239 B.R. at 274 ("The senior secured creditor will not be required to proceed first against a fund that requires more rigorous procedures to collect upon if it has a fund 'more directly available' to it that can be 'easily reduced to money.'") (quoting *Prichard*, 170 B.R. at 45).

A similar situation was presented in *In re Vermont Toy Works*, 82 B.R. 258 (Bank. D. Vt. 1987). The bankruptcy court determined that marshaling was appropriate because the senior creditor could seek recovery under personal guarantees of the debtor's shareholder and corporate officers, rather than from its first priority lien on the debtor's assets. *Id*. at 321-24, 331. The court reasoned that this was not prejudicial because recourse to the guarantees was "exactly what [the creditor] and [guarantor] intended all along." *Id*. at 331.

11

The district court reversed, finding, *inter alia*, that marshaling was not appropriate because the senior creditor would "be prejudiced by having to abandon liquid collateral to proceed against a personal guaranty." *Vermont Toy Works*, 135 B.R. at 773; *see also In re Dealer Support Servs. Int'l, Inc.*, 73 B.R. 763, 766 (Bankr. E.D. Mich. 1987) ("In the absence of marshaling, the bank's debt can be immediately satisfied out of funds held by the trustee. In contrast, if marshaling were ordered, unless the guarantors paid the note, the bank would have to institute foreclosure proceedings, pay off the balance of the existing land contract, and suffer the inherent delays and expense of a foreclosure proceeding. To compel marshaling under these circumstances would clearly prejudice the bank."); *Matter of Woolf Printing Corp.*, 87 B.R. 692, 694 (Bankr. M.D. Fla. 1988) (denying marshaling because it would deprive senior creditor of "ready cash which could be immediately available" and cause "undue delay" in satisfying the debt).

If the inconvenience and delay created by compelling the senior creditor to sue on a guarantee or foreclose a mortgage is sufficiently prejudicial to prevent marshaling, then the years-long repayment delay proposed by Bourdeau clearly qualifies.

This Court recognizes that some courts have reached contrary conclusions, but finds those cases distinguishable.

In *In re Tampa Chain Co., Inc.*, 53 B.R. 772, 780 (Bankr. S.D.N.Y. 1985), the court found that marshaling could be "ordered where there is no evidence of difficulties in foreclosing that were unanticipated by the senior creditor at the time the loan was made and which now prejudice its interest or unduly delay satisfaction of its claim."

However, the creditor in *Tampa Chain* had recourse to "speedier remedies than the foreclosure process." *Id*. Here, the only two remedies available to FSA under the outcome proposed by Bourdeau would be (a) waiting for years and hoping to receive ongoing mortgage

payments or (b) foreclosure (with there being at least arguable doubt about FSA's ability to foreclose in the absence of a payment default).

In *In re Lee's Famous Recipes, Inc.*, No. 11-68463-BEM, 2013 WL 432480, at *8 (Bankr. N.D. Ga. Jan. 24, 2013), the court found that marshaling was equitable even though some creditors could experience a "slight delay in payment." Here, by contrast, marshaling would cause much more than a "slight delay in payment."

In sum, even assuming *arguendo* that *de minimis* delay or modest inconvenience to the senior creditor should be considered insufficiently prejudicial to prevent marshaling, the delay and inconvenience proposed here are well beyond *de minimis* and modest. Bourdeau has failed to meet its burden of establishing that the extraordinary remedy of marshaling is equitable. FSA is entitled to summary judgment.[2]

## CONCLUSION

For the foregoing reasons, Bourdeau's Motion for Summary Judgment (AP Docket No. 49) is DENIED, FSA's Cross-Motion for Summary Judgment (AP Docket No. 54) is GRANTED, and the Chapter 7 Trustee is authorized and ORDERED to disburse the personal property proceeds to FSA in an amount sufficient to pay its claim in full, with remaining proceeds being disbursed to

---

[2] In its motion papers, Bourdeau requests an alternate form of relief if marshaling is not applied. To wit, although not expressly requested in its Adversary Complaint, Bourdeau suggests that, as an alternative to marshaling, this Court could enter an order compelling FSA to assign its mortgages to Bourdeau to secure the balance remaining on Bourdeau's claim after disbursement of the personal property proceeds. Bourdeau cites no statutory authority that even arguably gives this Court the power to compel assignment of a mortgage over the objection of all of the parties to that agreement. The only authority offered by Bourdeau is a case in which FSA's suggestion that a junior creditor be given a replacement lien on real estate in lieu of marshaling was rejected by the court as "impracticable and unworkable." *See In re Beeman*, 224 B.R. 420, 425 (Bankr. W.D. Mo. 1998). Further, under Bourdeau's proposal FSA would assign the mortgages *after* the underlying debt is satisfied by the personal property proceeds. This is an outcome at odds with applicable New York Law. *See In re Escobar,* 457 B.R. 229, 240 (Bankr. E.D.N.Y. 2011) ("[A] transfer of the mortgage without the debt is a nullity, and no interest is acquired by it.") (quoting *Merritt v. Bartholick*, 36 N.Y. 44, 45 (N.Y. Ct. App. 1867)).

Bourdeau and with Bourdeau being granted an allowed unsecured claim for any balance remaining. FSA's counsel shall submit a proposed Judgment within seven days of the date hereof.

###